We'll hear argument in Apple v. Corephotonics, No. 20-1438. Ms. McComas, please begin when you're ready. Good morning, and may it please the Court. This is Debbie McComas on behalf of Apple. In this appeal, Apple appeals two rulings from the Board. The first was the Board's failure to find challenge claims anticipated by Kono, and the second was the Board's failure to find dependent claims 6 and 14 obvious in light of Kono in combination with Baruch. With respect to anticipation, this Court's precedent sets out a two-step inquest. The first step is for Apple to prove that Kono discloses each limitation of the challenge claims in the same order. Can I just add, this is Judge Toronto. It seems to me, I think this is just a fair description rather than contentious, but your argument here about anticipation depends on wording in various cases, and you want to treat the anticipation question as broken into two pieces which need not really have very much to do with each other. Isn't it true, though, that under 102, the question is whether the invention now claimed is described in a way that people could build in a single printed publication, and that requires when you identify in Kono a very specific set of features, which do include L4 and L5 because your TTL and TTL over EFL calculations, the only such calculations include those, that it is that set of features which you say map onto the claim has to be something a skilled artisan could build, and the problem is nobody could build it. There's a lot packed into that, Your Honor, so let me back up. The gist of it is my concern is that what you've done is to take pieces of the description of the anticipation inquiry and treat them as though they didn't really have to have anything to do with each other. Let me back that out just a little bit because I disagree a little bit. What we've done is we've analyzed it under the clear authority of precedent that this court has established, and one is, I agree with you, with respect to anticipation, Apple has to show that all of the elements are present in Kono, that Kono discloses all of the elements of the claimed invention that were challenging. Right, in the order and combination that they claimed us. For 102 analysis, you do not have to show that Kono would work. What you have to show is that Kono, to the extent it discloses those elements, that when you apply that to Claim 1, for example, which is a challenge claim here of the 712 patent, that you could make it, and that's what's required here. But I want to step back one because if this court were to hold that our obligation was to show both, that all of those limitations exist, and that it would work in the first instance, and that that burden is on Apple, Apple did show that here. And that was overlooked by the board because the board didn't actually do that analysis in its final written decision. And let me show you exactly, at Appendix 499 through 500, Apple's expert, and this is attached to the original petition, as Dr. Satien's declaration, says the only changes that would be necessary to fix the noted error in the distance between lenses 4 and 5 would be to a spirit coefficient. Those are not claim limitations here that are relevant to the challenge claims of the 712 patent, while maintaining the first order properties. Counsel, this is Judge Stoll. Could you identify for me, I think you said A49, 499 to 500. Which paragraph are you reading from? Certainly. Just a moment, Your Honor. I am specifically in the paragraph that runs, it's paragraph 66. It runs from 499 over to 500. Thank you. And then Dr. Moore, later, that's Core Photonics expert at Appendix 1501, goes on to... None of these things say what conceivably you could have said, which is that a skilled artisan, seeing the overlap, would recognize that this document actually teaches something not shown in the picture and not reflected in the table, namely, slightly moving it away so there isn't a physically impossible overlap. And then we will do the complete limitation by limitation analysis of calculating the TTL and calculating the EFL and calculating the ratio for that taught combination of features. The only calculations, at least that I see in the petition and the supporting expert, they don't include that. They rely entirely on the actual physically impossible example. Your Honor, I think it sounds like we're conflating the concept of inherency with the question of anticipation and enablement. And there are some fine issues there in the case law that we should better out, I think. Inherency, we're not saying that you had to go look at what a post-seeker would understand from this claim limitation. What Apple said and what the evidence shows, every single element, every single limitation in the challenge claims exists on the face of Kona. Judge Stoll, I understand your point about inherency and I know you're not relying on inherency. The problem I'm having is that you have this language, the overlap between lenses L4 and L5 has been corrected. This lens adjustment would have been done by a lucida as a routine adjustment. I understand that. My problem is that maybe that solves the enablement problem, but I don't see where that's anticipation because you've now modified the reference. And that modification is not something I would think would be an anticipation argument. It's an obviousness argument. How do you respond to that? I think I'm not being clear, Judge Stoll, and I'm sorry. What I'm saying is that the lens distance between lenses L4 and L5 doesn't read on the claim limitations. There is a TTL requirement in the challenge claims, but what the evidence I just cited to you at Appendix 499 through 500, this whole issue with respect to those lenses, once they proceed to run the numbers and notices that those would overlap, doesn't change the TTL in any way. So there's no modification necessary here for the lens on its face. And the reason why it doesn't change the modification is because you're relying on being operative can't-be-made embodiment in order to anticipate the claims. Is that right? Can you repeat that? Okay. I'm saying that the reason why you don't need to change it, the TTL, is because you're relying on the non-working example in the prior art. Right. The prior art example doesn't have to work. It doesn't have to be operative. It simply has to disclose it. And if you think about why that makes sense here, and generally in the law, the question is whether we're putting something in the public's possession. And that standard is, from an anticipation standpoint, are all the limitations there? They are. What about cases like Dowdy? There's a case, NRA Dowdy, it is a CCTA case, and it says inoperative devices cannot anticipate claims. And what do we do with cases like that? What support do you have for the idea that an inoperative device can anticipate a claim? There are quite a few, Your Honor. I'm not familiar with Dowdy, but we do cite quite a few cases in our briefing that talk about how it doesn't have to be operative. Some of the ones I laid out quickly, there's a- I just want to interrupt. I'm sorry. This is Judge Toronto. It seems to me everything depends on what the it is in your sentence. It's absolutely true that not everything in a reference that is being invoked as anticipatory needs to be enabled. But the very combination of features from that single printed publication that you say maps, describes, identifies the exact set of claim limitations in the now at issue claim, that does have to be enabled. Well, it's a separate analysis, Judge Toronto. So first, it has to be disclosed. And then you ask the question of whether one skilled in the arts could make, not use, but make that invention based on that disclosure. And that's an important distinction here, because here you have all of the elements in KONA. I think that's undisputed, that all the elements are there. In KONA, the question is whether it would work. And that is a separate analysis. And it's important because that second analysis, what the authorities tell us, is that you can then look to what a posita would understand to apply that. And when we get to that question, even Dr. Moore admits that the modification that's proposed in KONA wouldn't make a difference. It wouldn't change anything. I don't think I saw any case. But my question is, any of the cases that you cited, do they involve a situation in which the knowledge of a person of skill in the art was used to show the enabling character of the anticipatory combination by changing the features of the anticipatory combination that were relied on to show that all the claim limitations were met? The answer is the cases say, and I think this also answers Judge Stoll's question, so I'll try to hit them all at once. There are a line of cases that talk about how something didn't work, that there was something in the prior art that didn't make sense or didn't work on the way it was disclosed, that there was something that happened from a posita's perspective that they would understand how that would work. So a couple of those cases are the Bristol-Myers versus Ben Venue case, where they had done research and had done tests, but they didn't do it on the same type of individual and therefore didn't get the same results. I'm sorry, Your Honor, if I could finish my answer quick. The N. Ray Paulson case is a case that deals with, there was a calculator which fit the definition of a computer, but you had to look at what one field in the art, what the posita was, to understand that they would know how to put that into a very complex system later. N. Ray Gleave is one where all they did was list 15 basins, I can't even say it, nucleotides, in a known nucleic acid, with no contemplation of how that would work or how it would be relevant to the prior art reference. And in Gleave they found when you put the analysis first with anticipation and whether or not those elements are disclosed, they are, and then you look at what a posita would understand to determine the enablement standard, then the anticipation was met. And you're saying all three of those cases, Bristol-Myers, Paulson, and Gleave, they're all anticipation cases, with that it also raised the question of enablement? Yes, Your Honor. Okay. Thank you. As I recall from the cases, and I think even from your description, what the posita is doing is adding knowledge to, say, find particular species of what is disclosed, but not, I think, in any of them, actually requiring an alteration that described a combination of features in the prior art printed publication. In Ray Paulson, Your Honor, actually added circuitry. It had to add some circuitry that a posita would understand to add. Right, because you can always add things to make something work, but here we're talking about actually changing something, namely the relation between L4, is it L4 and L5? I'm sorry. Yes. L4 and L5, on which the actually disclosed relation are part of your calculations to meet various claim limitations, the TTL and then the ratio of TTL to the EFL. Your Honor, I'm sorry, I know I'm running into my time, but I have to clarify one presumption that's just not accurate there. You do not have to make that modification to change anything with respect to the claims limitations here, and that was the citation to Appendix 499 through 500. What our expert says is that distance between lenses 4 and 5 do not impact the total track length or anything else. The adjustment he proposed, to the extent that was necessary at all, wouldn't change any of the elements relevant to the anticipation analysis. So before you even get to an enablement, it's just an irrelevant limitation. And I see my time is up. Okay, thank you very much. And we'll hear from Mr. Fenster now. Good morning, Your Honors, and may it please the Court again. The Court should affirm the PTABS decision because substantial evidence supports the PTABS determination that Apple failed to meet its burden to show either anticipation or obviousness. From the panel's questions, I think you're thinking about it exactly right. The question in Judge Toronto, your opening question, I think frames it exactly right, which is they are trying to separate the disclosure that they're relying on for anticipation from the enablement limitation. And by doing so, by trying to divorce that, they're trying to shoehorn what's basically a single reference obviousness analysis into anticipation. The case law is absolutely clear that if modification is required to meet the claim elements, then it is not anticipation. If modification is required, it is not anticipation. And the Board here specifically found that, this is at Appendix 23, that Kano's lens assembly cannot be arranged to provide a lens assembly that has an effective focal length, total track length of 6.5 or less, as claimed, without removing the overlap between lens L4 and L5. In other words, the Board made a factual finding that Kano cannot meet the elements without modification, and because modification was required, it did not anticipate. Can you address Paragraph 66 of the Sassian Declaration at Appendix 499-500? Yes. Okay, so there, this is Dr. Sassian in support of their obviousness determination. So this is not something that was presented in connection with the anticipation under Kano, but rather the obviousness. And specifically what it finds is that modification is required. And what it says is you have to modify those lenses to remove the overlap. The fact that you're modifying them by changing the aspherics is still a modification from the embodiment that is disclosed. There is only one disclosed embodiment that is purportedly arranged that they rely on as being arranged and combined in the way claimed, and that has to be changed in order to remove the overlap. So counsel- Do you read that paragraph? I thought I heard the assertion that this paragraph says that none of the other numerical requirements of the claim would be altered if this overlap correction was made. Do you read this paragraph to say that? I don't. What I read the paragraph to say is that you have to modify the disclosed embodiment. By modifying it, by adjusting the aspherics, it will change the shape of those lenses in a way different than what is disclosed in the embodiment and in a way that no longer overlaps. He does have a parenthetical there. There was some reliance on the word only in the second sentence of that paragraph. So what he says is only the aspherics were changed, and he has a parenthetical there saying, keeping first-order properties constant and changing aspherical. There's a-he's got a parenthetical there discussing exhibit 1006. But the point is that he is describing a modification, and that's done in the obviousness section, not in connection with the anticipation. So this is the acknowledgement that the board relied on, that they know there's a problem, they know it's not enabled, and it has to be modified, and therefore it's not anticipation. The board specifically found that Kano is not enabled. At Appendix 22, the board made the factual finding, we find that the error in Kano is sufficient to render Kano's example to LN2 lens assembly not enabled. Counsel, this is Judge Stoll. I have a question about that. How could the board have found that when it didn't even do a WANDS analysis? So it didn't have to do the WANDS analysis, because what they found is that Apple failed to meet their burden on enablement. So Anton and Morse are- So by saying that they had the burden of proof and that they had to present that evidence in their petition, that's all they had to do. That's your position, right? Well, the board specifically found, one, as a factual matter, that the error renders it non-enabled. Two, they specifically found at 22 that petitioner's discussion of the challenge showed that petitioner was aware and that that overcame the presumption of enablement. I get that. But you just said that they found specifically that that error made it not enabled as a matter of law, I think I heard you say. Yes. And so that goes back to my question, which is how can they find that without considering WANDS, unless it's not for the fact that they're relying on- that the burden of proof is on the petitioner and because they knew of the error, they had to explain their position in the petition. So they did not do the WANDS analysis because the WANDS analysis wasn't presented until the reply, you're correct. The board made a specific factual finding that is supported by substantial evidence that they were required to do so because the burden had been overcome and they failed to do so. Isn't that a procedural issue? I mean, you're talking about being supported by substantial evidence, but isn't that kind of a procedural issue? You should have put this in your petition. You failed to do it, therefore you haven't met your burden of proof. It's not really a substantial evidence issue, right? Well, I take your point, Your Honor, that that is a substantial evidence, but I think that we're getting a little sidetracked and that is because there's no dispute that LN2 is not enabled. There's no dispute that it is impossible. It does not work. It can't be made. The petitioner made that concession in the papers below and in the papers here. So, you know, that finding is not really at issue. It is not an enabled embodiment to make what's shown. The question then is... Everybody admitted that that embodiment was inoperative unless... I think Juan says, you know, you have to teach a POSA how to make and use the invention without undue experimentation, and the Juan's factors go to whether undue experimentation has occurred. And so you're saying that in a situation like this, we can just ignore the Juan's factors? Is that your position? Because everybody agrees that it's inoperative, but that's not... Then you have to ask that additional question, right, of whether there's undue experimentation. No, the Juan's analysis... So the reason... I think that the reason that this is a tangent, Your Honor, is because everyone agrees, and the board specifically found that modification is required. And then... I'm sorry. This is Judge Toronto. I'm not sure it's a tangent. I thought that your answer to Judge Stoll's question is, yes, you're absolutely saying if it's undisputedly inoperative, no need for Juan's analysis. You can't build this, no matter how much experimentation or how little. You just can't do it. That is absolutely right, Judge Toronto. Without changing it. That's right. Yes, that is what you're saying. That is what I'm saying. And, moreover, you don't even get to a Juan's analysis or enablement until you get to the modification to see, does this enable some other nondisclosed embodiment that might fit within the claims? But that, of course, is an obviousness determination, not an obviousness analysis, not anticipation. Here, there is no anticipatory disclosure that would enable one of skill in the art to make the invention. I understand you to be saying that in order to make and use the invention, you have to make changes to that embodiment. In order to use that embodiment, you need to make changes. Therefore, we're outside the realm of anticipation, right? That is correct. Okay. Thank you. Mr. Fenster, can I just-I realize we didn't get a chance to talk about the second issue, the Claims 6 and 14 with Ms. McComas, but we'll get back to that. You, I assume, don't dispute that there's a sentence in the Board's opinion that actually does contain a mathematical error, right? I think that that's right. I think I understand the mathematical error that they're relying on. So now we go back to substantial evidence, and there is substantial- Not just substantial evidence. Sometimes an error leads a court to say the matter should be reconsidered with that error removed. So why do you think that even if a Board could have reached the same finding about insufficient proof of a motivation to do what Apple put on evidence there was a motivation to do, why is that determination is unaffected by the mathematical error? Yes, because completely independent of the alleged mathematical error, there are independent bases that support and provide substantial evidence for the Board's finding. The Board specifically found at appendix 28 that the Barreau teaching was specific to wide-angle lenses and that Kano is a telephoto lens. They specifically found that Kano teaches a darker lens. So this is at page 27. The petitioner found that Kano and Barreau is not supported by sufficient rational underpinning. At 28, Barreau addresses only conventional. At 28, Kano is tele, and therefore not encompassed within the teaching of Barreau. And then at page 29, Kano discloses a wide-angle lens with lower f-number than f-number of tele. Petitioner does not persuasively explain why the ordinarily skilled artisan would disregard Kano's own intrinsic teaching of a lower f-number for wide-angle and look to another reference Barreau also concerning wide-angle to lower the f-number of Kano. Counsel, this is Jeff Stoll. I just have one question here. How do I know that when the Board refers to Kano's own intrinsic teaching of a lower f-number, i.e., for a wide-angle lens assembly, how do I know that there isn't some reference there to that idea that their understanding that the f-number is lowered to 2.8, that it wouldn't satisfy Kano's conditional expression 5, they refer to? That's the mathematical error. How do I know that that's not included in that intrinsic teaching? I recognize there's other reasons the Board provided, but I just was wondering about this one sentence in particular. Yes, so Kano has, you know, it's a two-lens assembly, a wide-angle and a tele, where the tele lens has a higher f-number than the wide, and the wide, which is lower, is 3.0, and it's not 2.8. And so the purported motivation would be to lower the f-number, but so what the Board is saying is, why would you look beyond Kano's teaching to lower it to 3.0, which doesn't get you to 2.8? And there's no motivation to combine with Barreau, which is talking about a completely different lens system. I understand, but do you think the language, Kano's intrinsic teaching of a lower f-number, where does that come from? Does that drive at all from the statement on page 28, that in the combination proposed by the petitioner, f-num is lowered to 2.8 based on the teachings of Barreau, thus failing to satisfy Kano's conditional expression? I'm just, what is your, I realize there's additional reasons provided that you've said, but how do I know that the Board isn't also relying on this Kano's intrinsic teaching language that it's also relying on the math error? Do you have anything else to add in response to my question? No, I think that that also supports the Board's determination. And keep in mind that, so two points that I'd like to add. One, with respect to the, so first, Kano's failure to teach, anticipate, is fatal also to claims 6 and 14. So if you affirm on the anticipation ground, that would also take out the 6 and 14, because they only relied. Did you make in your brief the argument that you just articulated in that last sentence? I believe we did. I believe that we did, because they only rely on express teaching in Kano, and therefore, and they didn't do anything different. There's no obviousness analysis that's separate from the express disclosure. The last point that I wanted to make, Your Honors, is the substantial evidence, if I can just finish this thought. May I? Yes. The substantial evidence test is different where the Board found that the party bearing the burden of proof failed to meet that burden of proof. That is a very, very rigorous standard. Unless the evidence is so overwhelming that it can't be read otherwise, then you must affirm under the substantial evidence guideline. And keep in mind that that is different than when the Board finds that they did meet the burden of proof. The review of the substantial evidence test is different, depending on which side won relative to who had the burden of proof. And here, it is most difficult and most stringent application, because the Board found that Apple failed to meet its burden of proof as to anticipation or obviousness. Any other questions from the panel? Hearing none, thank you, Mr. Fenster. And Ms. McComas, you have whatever your rebuttal time restored. Thank you, Your Honors. In the short time we have, I want to hit very quickly some things that Mr. Fenster said. First, he said everyone agrees that modification is required. That's not quite right. Everyone agrees that there was an error in the distance between lenses 4 and 5 in Kono. That does not impact the limitations that are at issue in this case. You have 85 pages in the petition, supported by another 70 pages in Dr. Sassion's declaration, that show why every single claim limitation is met by Kono, as is disclosed here. What we are talking about is whether Kono, because there is a distance issue between lenses 4 and 5, whether that impacts in any way a proceeder's ability to make the claim limitations that are disclosed. And the only evidence you have here is that it's not, that it doesn't impact it. But as Judge Stoll pointed out, we don't really know that because we didn't go through the WAN factors. The only reason why we might be able to avoid the WAN factors here is because you have Dr. Moore agreeing that it wouldn't make a difference. And that's at Appendix 1501, Paragraph 101. And the other thing I want to point out that there's been some conflation here about what enablement means versus what anticipation means and what the burden is. What the board did here was it stood the whole burden concept that this court has created on its head and basically said we don't have to go by it. Ms. McComas, I'm sorry, you were a little too fast for me on your reference to Dr. Moore. Can you tell me again the appendix page that you're relying on? Yes, Your Honor. Appendix 1501, and in Paragraph 101, Dr. Moore says he's explaining something different and what he says is, as a result, the modification of CONO to separate the fourth and fifth lenses while still satisfying the claim elements of the challenge claims of the 712 patent. Okay. So can I ask you, I guess, two questions related to the obviousness portion, the 6 and 14? First, do you agree that if we were to affirm the non-anticipation ruling that we need not reach the 6 and 14 ruling? Because for most of the, yes, that question, full stop. No, Your Honor, because Claim 6 and 14 analysis was under an obviousness standard, so you would still be able to send this back down under that. The Board only makes this one, its only conclusions are based on the motivation to combine Claim 6 and 7, I mean, sorry, for Claim 6 and 14, based on this math error. So if you find there's error in the math, then that would be reversible and we would go back down to the Board. That, I guess, is my second more substantive question. Why is the math error anything other than harmless? Why isn't the proper reading of pages 27 to 29 of the Board opinion that everything else, with the exception of that one sentence, is supported by substantial evidence and is independent of whether a particular calculation of 3.0 over 2.8 comes within or falls outside that conditional inequality number five? Because I don't think you can read the Board's decision without realizing that its conclusion that wide-angle lenses were different from telephoto lenses was driven by its conclusion that Kono never made that, I mean, Kono never contemplated scenarios in which the S number of a telephoto lens is lower than a wide-angle lens, and that's just contrary to the evidence when you do the math right. So you can look at Appendix 831 to 832 to find the support that the conditional expressions of 5 and 5A actually suggest that a telephoto lens, the S number of a telephoto lens, is favorable to be lower than a wide-angle lens in certain instances. And that's the motivation that the Board missed and that drove its entire decision. Oh, Counsel, this is Judge Stoll. So I think I understand you to be saying that because of that mathematical relationship, there are some circumstances where that comment about how it's advantageous to make second imaging optical system darker than the first imaging optical system isn't going to be true in Kono. Is that right? I think that what I'm saying is that what it's saying is that there are instances where the S number of the telephoto lens, where it's encouraging the S number of the telephoto lens to be lower than the wide-angle lens. Where's the encouraging part as opposed to contemplate the possibility of, because merely contemplating the possibility doesn't itself give you an explanation for why a skilled artisan would have a motivation to pursue that possibility. Is it because of the number 1.3 in the mathematical formula? Right. And it's because what I'm saying is kind of a bigger picture than that. What I'm saying is that the Board, which driven and drew the conclusion, and a big part of its findings in that section are that the reason we don't talk about wide-angle lenses or don't treat them, we wouldn't be motivated by the wide-angle lens in Barreau, is because there's nothing in Kono that suggests a lower F number. But in Kono, if you do the math right, it does have scenarios where the lower F number would work. And the Board's analysis, I think, is burdened by that presumption. And if the presumption is wrong, then you can't trust the entire analysis in that section. Does that make sense? Yes. I think I've used up my time, Your Honor. Okay. Well, thanks to all counsel, and the case is submitted.